JACKSON, DIRECTOR OF TRANSPORTATION, APPELLANT, *v.*
COFFEY ET AL., APPELLEES.

(No. 76-1262—Decided November 2, 1977.)

44

*Mr. William J. Brown*, attorney general, *Mr. Donald J. Guittar* and *Mr. Perry R. Silverman*, for appellant.

*Messrs. Clayman & Jaffy* and *Mr. Stewart R. Jaffy*, for appellees.

*Per Curiam.* R. C. 124.57 provides, in pertinent part, that:

" * * * nor shall any officer or employee in the classified service of the state * * * be an officer in any political organization or take part in politics other than to vote as he pleases and to express freely his political opinions."

The term "politics" appearing in the above provision has been defined to include partisan activities such as securing and holding public office through elections. *Heidtman* v. *Shaker Heights* (1955), 163 Ohio St. 109, 118-120.

In the instant cause, the appellee served as a member of a county party central committee. In *State, ex rel. Hayes,* v. *Jennings* (1962), 173 Ohio St. 370, this court stated that membership in a county central committee of a political party constitutes holding of public office by virtue of the authority vested in the committee by R. C. 305.02(B). Such a committee has statutory authority, under certain specified conditions, to appoint persons to several county offices. Therefore, it is clear that such committee membership, *per se,* falls within the political activities proscribed for classified employees in R. C. 124.57.

The Court of Appeals, although concurring in the finding by the board that the appellee had violated R. C. 124.57, held that the board did not abuse its discretion or

act contrary to law in disaffirming the removal order. We disagree.

R. C. 124.01(D) defines an appointing authority as "* * * the officer, commission, board, or body having the power of appointment to, or removal from, positions in any office, department, commission, board or institution."

Also, R. C. 124.34, in part, provides that:

"The tenure of every officer or employee in the classified service of the state * * * holding a position under this chapter of the Revised Code, shall be *during good behavior* and efficient service and no such officer or employee shall be reduced in pay or position, suspended, or removed, except as provided in Section 124.32 of the Revised Code, and for incompetency, inefficiency, dishonesty, drunkenness, immoral conduct, insubordination, discourteous treatment of the public, neglect of duty, violation of such sections or the rules of the director of administrative services or the commission, *or any other failure of good behavior or any other acts of misfeasance, malfeasance, or nonfeasance in office.*" (Emphasis added.)

There is no question that an appointing authority may remove a civil servant for "failure of good behavior," and although the General Assembly has not chosen to specifically define what actions constitute misbehavior subject to removal, it is logical to conclude that partisan political activity, proscribed for all classified employees under R. C. 124.57, is included in such behavior. Consequently, there was an adequate basis for removal of the appellee in the instant cause.

Simply because R. C. 124.03 provides that the State Personnel Board of Review may affirm, disaffirm, or modify the decisions of the appointing authorities, does not imply that the board may, in its discretion, overrule lawful decisions made by the appointing authority. R. C. 124.06 specifically states that:

"*No person shall be* appointed, removed, transferred, laid off, suspended, *reinstated*, promoted, or reduced as an officer or employee in the civil service, *in any manner*

*or by any means other than those prescribed in this chapter* * * *."* (Emphasis added.)

In the instant case, the board disaffirmed the lawful removal order issued by the appellant on the basis that he failed to issue such order within a reasonable time. Nowhere in R. C. Chapter 124 does such a rule or provision exist, and the board was in error to have employed it.

Both the board and the Court of Appeals place great stress on the fact that Mr. Coffey was promoted regularly throughout his employment, and that there was no evidence in the record to indicate a lack of efficiency, integrity, or satisfactory service. Nevertheless, it is clear that however laudable an employment record may be, a classified employee may not involve himself in partisan political activities.

In *State, ex rel. Neffner,* v. *Hummel* (1943), 142 Ohio St. 324, 329, this court stated that the underlying purposes of the civil service regulations are "* * * to secure the maximum of efficiency and integrity in the public service; to restrain persons occupying positions in the classified service from political activity; to prevent discrimination for political, religious or racial reasons; and to guarantee permanent tenure to persons in the classified service."

The purposes of the regulations, and specifically of R. C. 124.57, would be subverted if a classified employee could escape the proscriptions of R. C. 124.57 by simply showing a satisfactory employment record.

This court therefore reverses the judgment of the Court of Appeals which reinstated the decision of the board. The board clearly acted contrary to law in disaffirming a lawful removal order issued by the appointing authority.

*Judgment reversed.*

O'NEILL, C. J., CELEBREZZE, W. BROWN, P. BROWN and SWEENEY, JJ., concur.

HERBERT, J., concurs in the judgment.

LOCHER, J., dissents.

LOCHER, J., dissenting. I respectfully disagree with the majority's conclusion that the State Personnel Board of Review (board) clearly acted contrary to law in disaffirming a lawful removal order issued by the appointing authority. The statutes are explicit in delineating the authority conferred upon the board. R. C. 124.03(A) reads, in relevant part:

"Hear appeals, as provided by law, of employees in the classified state service from final decisions of appointing authorities * * * relative to * * * discharge * * *: the board *may affirm, disaffirm, or modify the decisions of the appointing authorities* * * *." (Emphasis added.)

R. C. 124.34 further provides:

"* * * In the event such an appeal is filed, the board * * * shall hear * * * such appeal * * * and it *may affirm, disaffirm, or modify the judgment of the appointing authority.*" (Emphasis added.)

The preceding language can only be read as expressing a legislative intent to vest discretion in the board to reach a decision different from the appointing authority relative to the removal or suspension of a classified employee.

This court, on numerous occasions, has stated that the discretion of an administrative agency, in the absence of an abuse thereof, will not be disturbed by the courts. *State, ex rel. Shafer,* v. *Ohio Turnpike Comm.* (1953), 159 Ohio St. 581; *McCloud* v. *Woodmansee* (1956), 165 Ohio St. 271. A perusal of the record *sub judice* fails to demonstrate that the board abused its discretion in disaffirming the subject removal. R. C. 124.57, which prohibits political activity by a classified employee, provides neither a penalty nor any guideline as to disciplinary measures. Furthermore, R. C. 124.34 states that the tenure of a classified employee shall be during good behavior and efficient service. This section also lists a myriad of grounds for reduction in pay or position, suspension or removal, but makes no attempt to assign a specific penalty for a given violation. The only logical inference to be drawn is that the General Assembly intended the imposition of the pen-

48

alty to be a discretionary function facilitated by an examination of all the relevant facts in each situation.

In the present cause, the board did find a violation of R. C. 124.57. However, there were other factors for its consideration in imposing the appropriate sanction: (1) Appellee was regularly employed; (2) the record did not indicate a lack of efficiency, integrity or satisfactory service; and (3) the short duration of the political activity and its limited function of recommending poll workers. Considering the record, it is difficult to conceive how the board could have abused its discretion in disaffirming the Director of Transportation's removal of appellee. The net result of the majority's decision is the withdrawal of the board's discretion, contrary to the legislative scheme. This portends the disastrous possibility of the various appointing authorities assessing penalties of different severity for identical infractions with no recourse to either the board or the courts.

Therefore, I respectfully dissent.